By the fourth section of the act of 1812, ch. 88, which, by the act of 1816, ch. 16, as well as many other sections of the act of 1812, are adopted as part of the charter of the Neuse River Navigation Company, it is declared: "That each subscriber shall pay for every share by him or her subscribed, at the first general meeting, the sum of ten dollars to the treasurer of the company; and the names of those who fail to pay then and there may be struck off the books, and others complying with this regulation may take such shares." The name of Delacy was not struck off at the first meeting, nor did he make any payments on account of the shares subscribed for by him; but he states that, in lieu thereof, he contracted with the president and directors to do certain work on the river Neuse. He admits that the work was not completed, and that the president and directors declared the contract to be at an end, according to the power reserved to them in the contract to do so if they thought proper.
When this declaration was made, the parties stood in the same situation they were in at the first meeting, except that that meeting had passed away and it was too late to pay the first installment at that meeting. But when it shall be kept in view that it was by the consent, and no doubt at the request of Delacy, that payment had not been made, and that he had failed to do that which was a substitute for it, I think the equity and justice of the case, and the fair construction of the act of Assembly, would place the parties in the same situation at a subsequent meeting as they stood in at the first, so far, at least, as that Delacy then had the power and privilege of making payment, and, if he did not, that the stockholders had the right of striking his name *Page 141 
from the list of subscribers for shares. But it seems that his name was struck off by the president and directors, and not by the stockholders at one of their meetings. I think the president and directors, in doing this, transcended the limits of their authority; but this entry, by which the name of (280) Delacy was stricken off, was afterwards virtually adopted by the stockholders as their act; for they refused to receive Delacy's vote at an election for president and directors, and, had he had due notice of such procedure before it took place, I think, from that time he would have ceased to be a member of the corporation. Nor do I think the case would have been altered from the consideration that he had been a member from their first meeting up to that time; for every person who had subscribed for shares before he paid his first installment was a member to many purposes. He might, perhaps, have voted for president and directors; for passing by-laws for the government of the corporation. He had, perhaps, to the last moment of the meeting to pay his first installment. And for the same reason Mr. Delacy might have exercised the right of a corporator at any subsequent meeting before his name was struck for failing to make payment. But I suppose he possessed to more rights at any subsequent meeting before his name was struck off than he did at the first meeting. It has been said that Delacy possessed more shares than the stockholders who struck off his name from the books, and that there were not a majority, of course, at that meeting. If those who were present were qualified by having paid up their installments, and were a majority, of those that had done so, I think they were authorized to act as they did; for Delacy, owing to his delinquency, might by them be stricken off, as he might at the first meeting have been. But what is to be done if Delacy refuses to pay anything due on his shares? I cannot think the law contemplated a sale of them; for, besides the positive words in the act that directs the names of delinquents to be stricken off, the fourth section of the act of 1816, speaking of sales (not, to be sure, with a view to this question), speaks of sales of balances
due, meaning, no doubt, balances due after payments had been made. To purchase a share when nothing had been (281) paid would be to subscribe for a share. But another circumstance ought not to pass unnoticed, and that is, that Delacy had not notice that the corporation was about to strike off his name from their books. If he had had notice, he might have shown, for aught that appears, that he had paid his installments or that he was ready to do so. For this reason, and for this reason only, I am willing that a mandamus should issue. *Page 142